Good morning, your honors. Daniel Brady on behalf of the appellants. I'd like to reserve two minutes for rebuttal. All right. A few short months ago, the United States Supreme Court clarified the doctrine of qualified immunity. And I can I start with an even more threshold question, which is it's kind of an odd case in that we've got. It's a 1983 case. We've got the federal public defender office representing. And I haven't been able to figure out what the authority is for the. FPD to be representing a 1983 case, I saw the district court judge's order granting it where he said this was related to some habeas action. I noticed, I think, in the district court. You all objected to their appointment, I think, several times in footnotes in your briefing. What is the state's position on their authority for the federal public defender here? And then I guess a bigger question is, what remedy is there if we were to conclude that they were inappropriately appointed in this case? Your honor, the state's position has been consistent. We don't believe that there was authority to. Can I get you to speak up? I'm hard of hearing. Sorry, your honor. The state's position has been consistent that we don't think there was authority to appoint the federal public defenders to represent Mr. By in this matter, because it seems to be a civil case distinct from the habeas petition that he had ongoing. However, it was something that we didn't brief to the fullest extent because it seemed to be more of a conflict on Mr. By's end. Should the court conclude that Mr. By lacked counsel, I think the remedy would be to reverse and remand, not just on that ground, but on the merits themselves. Because the case lacks Mr. By did not plausibly allege a violation of his constitutional rights. Well, no, I know you'd like to win on the merits, but I guess that sort of seems like a completely different issue than what if we think. The FPD's office is right on the merits, you know, but they were inappropriately appointed. What do we do with that? I think the answer would still be to reverse and remand because they had lacked the authority at the time of the appointment to file on behalf of Mr. By because they weren't able to represent him. So what you're saying is that if the district court erred in appointing counsel for him and we've got all the substantive arguments, we should skip over the substantive arguments and send it back, even though it's been briefed. I think it's twofold, Your Honor. The court could do that. However, as we've established on what basis would we do that? On the fact that the court lacked authority and at the time of the appointment that counsel would have lacked the authority to themselves make the arguments and act on behalf of Mr. By. But that doesn't make any sense because we've got the arguments now. Well, they would have been filed with the lack of authority. However, even if this court is to conclude that the FPD was validly appointed or that the remedy wouldn't be a reversal and remand, the court could still reach the merits upon which they would also want to reverse because Mr. By did not plausibly allege a constitutional violation. And let's get to the merits. We're at the motion to dismiss stage, right? Yes, Your Honor. And the briefing in this case below, I find very puzzling because it was really on 12B6 failure to allege plausible allegation grounds. And now it's all about qualified immunity. But be that as it may, you're saying at this 12B6 stage, no claim survives? Yes, Your Honor, because at the 12B6 when there has been an allegation of qualified immunity, as the Supreme Court made clear in Ashcroft v. Iqbal, the court can't separate the allegations from determining whether there's qualified immunity. Because part of the qualified immunity analysis is at the first step determining whether there's been a plausibly alleged constitutional violation. So on your analysis, it's not just that he didn't allege any claims to meet the plausibility standard of 12B6, but that's interrelated with qualified immunity. Yes, Your Honor. Because there's no clearly established law on any of these claims. Yes, Your Honor. So can you address the First Amendment claim? Yes. Turning to this First Amendment claim regarding retaliation, this is directed against Officers Kadhari and Holgrim, and I want to address them separately because the allegations of the conduct are different to both. When you look at Officer Holgrim, Mr. Bice simply alleges that he used racial epithets and curses. As this court has been clear, mere harsh words alone are insufficient to show a retaliation claim. There has to be something more. So I'm looking at ER 133, 134. After he filed the complaint, the officers used racial epithets, turned on the light at night, turned off his water, and filed a false report that resulted in disciplinary charges, albeit they were eventually dismissed. We've got Brodham that says it's well established that the right to file a grievance exists in the prison setting and that officers are precluded from retaliation as a result of that. At this 12B6 motion to dismiss stage, why is that not clearly established law? Your Honor, at first I'd like to parse back onto the two defendants. When you look at Officer Holgrim himself and you look at paragraph 40 in the complaint on ER 133 and 134, he was alleged that he used racial epithets and curses. But as this court has been clear, those actions themselves aren't retaliatory. Mere harsh words alone are insufficient. So because it's Officer Holgrim, he was only alleged that his actions weren't of themselves retaliatory. They failed to plausibly allege that Officer Holgrim engaged in a retaliatory action. If you look at Officer Kadhari, it is a little bit different because there are alleged three actions. But if you look at them under the complaint in paragraph 40, they seem to allege a concrete instance of where he used racial epithets and curses and one instance of where the lights were left on overnight and one instance of where the lights or where the water overnight was turned off to his bathroom. And while this circuit has not addressed those actions individually, other circuits have addressed them and concluded, at least in the Eighth Amendment context, that turning off the water overnight is not a constitutional violation. Because as inmates, they're supposed to suffer a few more indignities or otherwise. What about Hoptewitt? Inadequate lighting and poor plumbing violates the Eighth Amendment. This is why I'm asking you because there are so many allegations, multiple officers. So it would be helpful to get the state's views on whether you think that there's clearly established law for any of these officers. And then we can go through one by one. But in the time that you have, that's not going to be very realistic. So to address the case that you mentioned, when you look at that in the broader thing, that was inadequate lighting across the prison system as a whole. Other circuits have recognized that the process of keeping lights on overnight can be justified as a safety concern for the Eighth Amendment. And when you look at these actions, as to Officer Kadari, he's just alleging a pattern and a practice. But there's no there's been no clearly established case law that in this context that simply stating leaving lights on. The state's position is that taking these allegations as true, that it is acceptable to retaliate, retaliate against an inmate for filing a complaint by leaving the lights on at night, turning off the water and filing a false report. Your Honor, that goes to his allegations regarding the not regarding whether the officers actually were aware of the complaint at the time that they started to take these actions. He alleges that he complains and he alleges that these actions occurred. But he doesn't have any sort of tie in knowing that the officers were aware of these actions. Because, again, his grievances that he filed were directed towards his medical care. As to these actions themselves, he states that he was complaining to the supervisor of officers Kadari and Holgrim. And the super and that complaint, the core of that was that they weren't bringing him his medication and they weren't bringing him his food to his bedside. They were leaving at his slot. So the complaint that he actually alleges is that that he complained to these officers that they weren't bringing him his food or his medication. And then these later grievances that he speaks about deal with the lack of medical care that he has. And there's nothing tying this to the because. There's no allegation that the officers were aware of these complaints when they started to engage in these actions. And indeed, these actions themselves seem to be de minimis. And the case law wouldn't clearly preclude it because the officers could have read some of the case law and conclude, well, we can leave lights on overnight because it is a safety concern. And the officers could read case law that states there has been no case law that states turning off water filing of a false report isn't sufficient to have the inference that they knew and retaliated. Again, Your Honor, that only goes to Officer Kadari that there was a file of a false report. But as this court has said, a false report and no conviction or no and or no further actions does not constitute a retaliation claim. You need something more than simply the filing of the report. So to the extent. So even though the allegations, the plot and the factual allegations themselves are insufficient. The law under the Supreme Court's Zorn case, which requires the officers to have been able to read the case law beforehand and known that it clearly prescribed their conduct, has not been shown. Or it's so obvious that we don't need a case on all fours. No, I'm not saying, Your Honors, that there needs to be a case on all fours. Obviously, the Supreme Court or this court can apply or can deny qualified immunity on novel factual situations when the right itself isn't clearly prescribed. But again, the right can't be described at a high level of generality. Indeed, the Supreme Court has been clear and clear and clear, even in Zorn, that the officers have to be able to read the cases themselves beforehand and known their conduct was clearly prescribed. That's not the case here. The case laws could have told them that they could have taken these actions, especially assuming that there aren't allegate, especially because there is no allegation tying the lack of the knowledge of complaint to their actions taken in terms of retaliation. On the 8th Amendment claim by sites to the jet case, that's the inmate who injured his thumb and there was a six month delay in securing adequate treatment. Why isn't that the clearly established law for some of his 8th Amendment claims? Well, so when you look to his 8th Amendment claims regarding the delay of receiving treatment, he's focusing both on a delay in getting his appointment scheduled as well as a delay in receiving his medical braces. As this court has recognized in Peralta, there is no there is no deliberate indifference claim when the lack of treatment or the delay in treatment was due to a lack of resources. By alleges as to regarding his medical claim that he that the officers attempted to order the brace and that they told him the brace was out of stock because the brace was out of stock. It was a lack of resources and there's no clearly established law in regards to the delay in the medical brace. Now his delay in receiving medical treatments, he's not alleging that it was a delay in receiving treatment from the NDOC doctors themselves. His argument is that there was a delay in receiving treatment from the outside providers that he was directed to see after NDOC's internal review panel approved the recommendations and allowed the treatment to be scheduled. But again, neither the defendants here, Dr. Cabrera and Faulkner, have control over when an outside provider's schedule allows an inmate to be seen. Indeed, as this court has been clear, these sort of delays due to lack of resources or control aren't deliberate indifference. None of NDOC's defendants have control over when an outside practitioner's schedule allows for an inmate to be seen. While Mr. Byde may be unsatisfied with the delay in that treatment, there aren't any allegations that the delay of providing external treatment after the review panel has approved it are because of the defendant's conduct. It simply goes to the fact that there is no control over an outside provider's scheduling. So while JET does recognize that a delay in medical treatment can be deliberate indifference, under the facts as alleged, that's not the case here because these defendants lack the resources and control over these outside events to provide this sort of treatment. What do we make of the allegation that the officers knew that his condition prevented him from getting food at the cell door? They delivered it to him when the supervisor wasn't around, as I understand it, but yet. Delivered it at the door. It's twofold, Your Honor. Mr. Byde admits and he alleges that he was provided a wheelchair in the cell and allowed and able to move around. Indeed, had he not been able to move around, he would not have been able to determine whether water had been turned off to his toilets overnight. He further admits at page 36 of his answering brief that there was no medical provider who ordered that the food or medicine be brought to Mr. Byde at his bedside. Because these defendants, who are not medical doctors, and as this court has made clear in Peralta and related cases, they are entitled to rely on the treating provider's medical determinations. The treating providers did not state, despite his injuries, you need to bring him his food or his medication to his bedside. They provided him a wheelchair to allow him to move around. He admits he was able to move around by able to get to his toilet and other facilities. So these officers were entitled to rely on the medical judgment of Byde's medical physicians, who have far greater knowledge of his treatment, to determine that there was no need to deviate from the policy of providing medication and food at the intake slot of his door. So because these defendants are entitled to rely on the medical provider's judgment, there is no clearly established law precluding their actions here. I'd like to reserve the remainder of my time for rebuttal. Sure. Thank you.  May it please the court. My name is Ryan Norwood. I represent Mr. Byde. So I'm prepared to address the issues in the briefing. Mr. Norwood, I want to ask, and I realize this is a little bit of a distraction, but it's an important distraction, because what I'm struggling with is if we were to conclude, which it just seems like it's very clear that your appointment, nothing against you all, but your appointment was improper here, it's a bigger problem than this case, because I don't think this is the only case that you've been appointed. I believe I asked, maybe it was you, this question in another case, and that time I thought it was a one-off thing. But now you've been here twice. I've done my own analysis. I'm very convinced that the appointment was improper and completely indefensible here. And the problem is large, because I don't think that FPD's office can say to the district court judge, no. And that's one thing I'd like to, if you believe your appointment was improper, what recourse do you all have? Because it kind of puts you in an awkward position with a district court judge who pointed you to say, no, I don't know if you can even do that. And then the bigger question is, I think Judge Wynn had a good point that it seems odd that your client should lose because a judge and you all have done something that's not allowed by the law. So what is the remedy? And that's why it matters a lot to me here, because I hate to take time on, I mean, this is part of the problem. We're taking time from his argument. But if we don't solve it in this case, as best I can tell, it is up to the court from the limited case likens to police this. And so that means it's up to us. And if we don't do it in this case, the district court judge is just going to continue appointing you all, which creates all kinds of issues. What do you do with the money that you get if you win these cases, you know, the attorney's fees? What happens if you provide ineffective assistance to counsel, which normally in a criminal case actually benefits your client? Theoretically and future habeas, but in this case would not. And so what do we do if we think that you all were appointed inappropriately? What's the remedy for that? So my respectful answer to that question has to be that this isn't an issue that's before the court right now. It's not briefed. It wasn't properly raised by the opposing party in the court below. I would question whether it is an issue that the opposing party can raise. Okay, so that's the problem. I think they decided that they did raise it below. They addressed it, you know, but they also have a problem with not wanting to get on the wrong side of the district court judge either because the district court judge appointed you all. He's probably not going to agree with them. I mean, there's an immense practical problem here, and if we don't address it, it's unlikely that they feel like they can do anything about it. You all aren't going to say no, even if in your heart of hearts you think that this is not our mission, this is not allowed by the CJA guidelines? What should we do? So jump over the we don't think you can do anything about it. If we can do something, what should we do? Well, I think that has to be the answer, Judge Van Dyke, because, again, it's not an issue before the court right now. The court is here to decide the dispute that's brought before it, which involves the legal issues. So if that's true, then I think your answer is the district court judge can continue to just unlawfully appoint you all and expand your mission. I'm not agreeing the appointment is unlawful. But if it is, what is the remedy? District courts have authority to appoint lawyers to conduct their work. The CJA section 210-2050 of the CJA guidelines says that 1983 suits are not covered by or compensable under the CJA. That's literally a quote. That's what the guidelines say. So do you just think those guidelines are wrong? Well, I have to go back to the first point here, which is that this is not a matter before the court. It's not a matter that's been briefed. It's not a matter that I'm prepared to address in detail right now, and I don't think that it's I mean, I asked you about it in a previous case, and so you never will be. It doesn't sound like it. I'm not saying that's the case. I'm just saying that's not Could we issue an order to show cause and ask the parties to brief it and address this? I think the court's jurisdiction in this matter is limited to the issues that are raised in this interlocutory appeal that the defendants have chosen to bring. I think you've said earlier that you don't think they can raise it, and if they can't, is this just like the opposite of a political question? If it's not a political question, it's a judicial question, which means it's something we have to figure out the answer to. Again, it's not the court's role to figure out the answer to every possible thing that Well, no, it is literally our role. Appointment of counsel is the court's role. It's the district judge's role, and if the district judge is doing it wrong, then it's just like an unreviewable thing. The district court judge can just ignore the guidelines? It is the district court's role, again. So it's the district court's role, and your view is that it's unreviewable discretion. Is that your argument? I'm not making some grand argument that there's no circumstance under which it can never be reviewed. I'm saying in this case, it's not an issue before the court, and it's not a matter for the court to And I'm asking you, if not in this case, how? Again, I'm not prepared to sort of go through all the permutations of that right now, Your Honor. I'm here because defendants have filed an interlocutory appeal, raising legal arguments, and I'm here to respond to those arguments. Let me have you address a couple of points raised as to the merits. On the First Amendment claim, counsel is saying that there's a missing allegation regarding knowledge of the complaint, so that tie-in is not there, and I don't have a specific recollection on whether that's in the complaint or where that would be. Can you help me with that? I think it's reasonably clear. I have it open to the claim here. So this is the retaliation claim. Paragraph 40. This is just quoting from it. In retaliation for Mr. Bai's complaints and grievances regarding their behavior, Defendants Guderi and Holguin engaged in a campaign of harassment against Mr. Bai. It had been earlier alleged that Mr. Bai, after he fell on the floor because they didn't bring the food to his cell, complained to their superiors, and they were disciplined because of it. And now when he comes... So you're saying that there's no explicit allegation that they knew he filed a complaint, and then this began, but given the context of the allegations, that that's clear? I would say that specifically alleging they did it in retaliation for it is explicit, but if it weren't, it would be implicit. When we're at the 12B6 stage, we're looking not just at what is said, but what can be reasonably inferred from the allegations. In this case, it can be reasonably inferred from the totality of the allegations that What we're alleging here is the defendants retaliated against Mr. Bai because of the prior grievances that he had submitted. And then on the 8th Amendment claim, I think the case law does establish that an unreasonably prolonged delay in treatment can be tantamount to an 8th Amendment claim, but the food delivery at the door versus bedside, counsel does raise the point that that judgment is to be made by a medical provider. So how do you respond to that? There's clearly established case law holding that non-medical providers can also be responsible in certain circumstances for failing to provide medical care or for being deliberately indifferent to medical needs. Right, but he's got a wheelchair in the cell, right? So can any inmate then say, well, I want food brought to my bedside because it's difficult for me to move to the door? Would that be sufficient? There's a little more to the allegations than that. In fact, there's a lot more than that. So he's in this bed because he's broken both of his legs and he's awaiting surgery. And it's alleged that the defendants knew that. And there have been prior occasions where they had not brought the food to him. Mr. Bayh alleges that he complained to their superior and that as a result of that complaint, they did bring the food to him, but only when the boss was around and that when he wasn't, they would keep bringing it to the still. So it's not just a complaint. The allegation isn't just that it's obvious, although we would say that it is, but that these particular defendants knew that they were supposed to be bringing the food to him because they had been told to by their superior and they didn't when he wasn't around. And furthermore, that's why they got disciplined for it later. So the allegation here is that these particular defendants objectively knew that they had to be doing this and that they weren't. Can you address Zimmerman and the availability of the post-deprivation remedy as to the withdrawal of money from his account? Certainly. So it goes back to the Supreme Court case that talks about part of the due process claim is that if there's a meaningful post-deprivation remedy, you have to avail yourself of that. So really, the inquiry is fairly coextensive with something that already comes up in a PLRA case, which is the exhaustion requirement. So at some point, if defendants wanted to raise an affirmative defense of exhaustion, they could argue that Mr. Bide didn't avail himself of remedies. But it's not a matter that the Court can resolve at this stage. This was your argument in your briefs. I think Judge Wynn just mentioned Zimmerman. I don't know if you're familiar with Zimmerman. You didn't cite Zimmerman, I don't believe, in your brief. I believe that's the— I don't think you mentioned Zimmerman in your answering brief. Or Zinnerman. I think you may have mentioned another Zimmerman. There's another Zimmerman, but not— And as I recall, the State said that post-deprivation remedy, you know, they cited the Supreme Court case you're talking about, said the post-deprivation remedy means there's no due process claim. Your response to that was, in your answering brief, as you did this morning, was, well, there's a factual dispute about whether there's a post-deprivation remedy. That seems obviously wrong because if there's a law that provides you post-deprivation remedy, which there is, so that argument seems obviously wrong and a loser for your client. A winner for your client is Zimmerman and Zinnerman, which you did not cite, which say that if there's a process and the process isn't followed, the fact that there's a post-deprivation remedy does not prevent you from being able to bring a due process claim. Those cases are right on point. They're a blatant response to the State, which also didn't brief them, and they mean that the State's argument is wrong. So what I'm trying to figure out is what do I do with the fact that you made an argument that doesn't work on behalf of your client, that you were inappropriately appointed for, in other words, ineffective assistance of counsel, but you didn't brief the cases that actually are directly on point. Do I find that they've been waived, or what do I do with that? I guess I disagree with the premise of the argument. The requirement for due process is a meaningful post-deprivation remedy. We have a general rule from the Supreme Court that says a meaningful post-deprivation remedy, and that would be something that could be – let's say I assume that that could be something that would be figured out by looking at the law, whether there is a post-deprivation remedy. So it's not a fact-specific dispute. Then what do I do with the fact that there is an argument, a different argument, that seems like a very good argument, but you all didn't make it. Did you waive it? What do I do with that? Again, it's a case-specific inquiry, whether something is meaningful, and that's what we're talking – that's what the dispute we have right now is, whether or not in this case – I understand. So you're standing on that argument, is what you're saying. You're standing on that argument. You're not making the Zimmerman-Zimmerman argument, which is a different argument. I'm standing on the arguments that I made in my brief and that I'm making today, Your Honor. All right. That's helpful. If the court thinks that I've waived an argument, it can deal with it the same way it would deal with any other waiver situation in this context. All right. I'm happy – I mean, there are a number of issues raised here. There are a number of claims. There's a similar issue going on with a case called Hine. You did cite Hine. If you remember, you cited Hine for the fact that 10 days in ADSEG – you may recall that you cited for the fact that 10 days in ADSEG doesn't actually count or is – this would be worse than 10 days in ADSEG for retaliation. It's sort of your clearly established law. Hine actually says, as best I can tell, that a – filing a false report, if it, quote, unquote, chills at all, period, is retaliation. It would stand for clearly established law for that. But again, I didn't see where you cited it for that proposition. You did cite Hine, unlike Zimmerman and Zimmerman, but you didn't cite it. So I'm trying to figure out what to do with that, too. I guess you did cite Hine, so maybe that's enough. I think the short answer would be yes, but the larger answer here would be, in the context of this particular claim, we've alleged more than enough to establish a claim under clearly established federal law. We've alleged that there was a campaign of harassment, including but not limited to the false disciplinary complaint that was conducted by these two defendants over the course of a month because they were upset that they got in trouble as a result of their prior deliberate indifference to Mr. Bai. So there are factual issues to be worked out with this. They don't have to agree with it, but it's not a matter that we can decide in defendants' favor at the 12B6 stage. Anything further, Counsel? No, there isn't, Your Honor. Thank you. Thank you.  Counsel, you make the argument based on the general proposition that a post-deprivation remedy is sufficient. Right. That's the argument that I think the State relied on. There are two cases, Zimmerman from the Ninth Circuit and Zimmerman. Zimmerman. Yeah. Unfortunately, very similar sounding. One is from the Supreme Court. One is from the Ninth Circuit that I think more specifically say that as best I can tell, if the person is just acting randomly, the official is just acting randomly and I guess stealing your money with no – then a post-deprivation remedy is sufficient. But if the person is acting according to some procedures but just not following them but there is some process, which that seems to fit fairly well with this circumstance. The problem is you made this general argument that the post-deprivation – there was this response. The FPD did not respond with that. Instead, they said that there is no post-deprivation remedy and that's a factual question that precludes summary judgment which I don't think clearly isn't right. The point is I think there's a strong argument in response to you all's argument, but it wasn't made. What do we do with that? Twofold, Your Honor. I think first it's been waived. It was not raised. It was not cited, and it was not argued. So I don't think this court would be able to raise it in the first instance to resolve the case. But even if the court is to consider – It's not a pure legal question? But that goes to the second point, Your Honor. Even if the court is to consider this argument about a process not being followed, the process here, he was charged with escape, he was found guilty of escape, and as part of that he was ordered to pay restitutions. As the opening brief addresses, the administrative regulations charge restitution in that to be half the cost incurred in the medical treatments for his – caused by his – that he incurred in his escape attempt. So even if we were to consider these cases, there was, in fact, a process that was followed. Mr. Bai is unhappy with the process, but that goes to – The weird thing about that is is that it seems like based on the allegations that he was basically told, we took money out of your account because of these medical expenses because you hurt yourself trying to escape. And that's all that was – that's all that was kind of told to him. And that just feels like – in fact, and then the number he was given was kind of messed up. There's some sort of clerical mess. That doesn't seem very – Yeah, that doesn't seem very – like it seems like they should do something more than that. Like explain at least like this is the itemization of the cost or something. I don't know. Yes, Your Honor, but that goes towards the adequacy of the post-deprivation remedy. So he had – But if a post-deprivation remedy isn't required under Zimmerman and – But those go towards whether the process itself was followed in the administrative state, and that process was followed. And the reason that there couldn't be a concrete number ever provided is Mr. Baez continually alleging that he's suffering five years later ongoing medical care related to the injuries he sustained in his escape attempt, which is a constantly evolving number. But he was, in fact, found guilty of restitution. And while he's unhappy with the restitution that's been ordered, he does have the adequate post-deprivation remedy, which this court has found, albeit twice in two unpublished cases, this statutory scheme is an adequate remedy. So he was – Well, maybe it happened, but his allegations are he was basically not – I mean, I think his allegations are basically I was told we took your money. I wasn't even really told the amount. So if we assume those allegations are true, which we have to at this stage of the case, then why would he not, if Zimmerman – and if we were to apply Zimmerman and Zimmerman, it might be that between now and summary judgment, then it becomes clear that, no, he was provided pieces of paper that actually had more, or maybe even he wasn't provided that with no harm, no foul, because there is actually justification. But his allegations seem to be that all he was basically told is we took your money. Well, he – there were two parts. For a medical reason. I'm sorry. For a medical reason. There were two parts towards his allegations. As he admits in the – in paragraph, I believe it was 33 of his complaint, he was found guilty of an escape, and he was ordered that he was going to have to pay restitution. So he was aware, and he alleges that he knew he was going – he was ordered to pay restitution. In his later complaints, after he saw the amount was being – he filed his grievances related to his allegations after he noticed the amount of money being withdrawn. That's when he was provided the information stating that it's being withdrawn for – that it's being withdrawn for your medical care due to these – and that's where we start getting into the scriber's error about the amount of money and the restitution that he owed. So when you look at this, he does acknowledge that he was being ordered to provide restitution and that the amount was told to him. He's unhappy with the amount, but he was able to have the process followed where it was ordered to be provided, and he then has an adequate post-deprivation remedy where he's now able to – Your argument is he did have the pre-deprivation process because he had this – that's what this thing was that found that he had tried to escape and hurt himself. Yes, Your Honor. All right. And I see that my time is up. We took you over time, but we appreciate your answers. Thank you very much to both sides for your argument this morning. The matter is submitted.
judges: NGUYEN, VANDYKE, Huie